Carol ELTMAN, individually, and as Special Administrator of the Estate of Charles Eltman, deceased, Plaintiff,

v.

PIONEER COMMUNICATIONS OF AMERICA, INC., Pioneer Electronics Corp., and Pioneer Electronics Service, Inc., Defendants.

No. 93 C 3488.

United States District Court, N.D. Illinois, E.D.

Oct. 4, 1993.

Jeffrey Singer, Joseph P. Shannon, Segal, McCambridge, Singer & Mahoney, Ltd., Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

This matter is before the Court on Defendant Pioneer Electronics Service, Inc.'s Notice of Removal. Plaintiffs have filed a Motion for Remand. Plaintiffs argue that removal was improper because: (1) Defendant PES's notice was untimely because it occurred more than thirty days after the first defendant was served with the complaint; and (2) Co-defendants Pioneer Electronic Corporation ("PEC") and Pioneer Communications of America, Inc. ("PCA") did not join in or consent to the removal in a timely manner. For the reasons discussed below, Plaintiffs' Motion is denied.

### Background

This case arises out of a fire that occurred in the residence of Plaintiff Carol Eltman and decedent Charles Eltman on November 17, 1991. That fire resulted in the death of Charles Eltman and the injury of Carol Eltman.

On June 10, 1992, Plaintiff commenced a wrongful death and survival product liability action against Pioneer Electronics, Inc. ("Pioneer Electronics") in the Circuit Court of Cook County, Illinois. (Compl. at Law, No. 92 L 007099 ("CMPT1").) In the Complaint, Plaintiffs alleged that Pioneer Electronics designed, manufactured, and distributed a cable television converter/box, that the converter/box caught fire, and that the fire caused Plaintiff Eltman's injuries and decedent's death. (CMPT1 at ¶¶ 2, 3, 5.) Plaintiffs alleged that Pioneer Electronics was liable under a strict liability in tort theory. (CMPT1 at ¶ 8.)

In what appears to have been Plaintiffs' continuing effort to identify the proper defendant or defendants, Plaintiff amended the initial complaint. Plaintiffs filed an amended complaint (the "Second Amended Com-

plaint"), adding Pioneer Communications of America, Inc. ("PCA") as a party defendant on August 24, 1992. (Ex. B to Pls.' Reply to Defs.' Resp. to Pls.' Mot. to Remand.) PCA was served on September 2, 1992. (Aff. of Serv., see Ex. A to Pls.' Mot. for Remand.) Plaintiffs voluntarily dismissed Pioneer Electronics as a party defendant on November 12, 1992. (Ex. A to Pls.' Reply to Defs.' Resp. to Pls.' Mot. to Remand.)

As a result of information garnered during pretrial discovery,[1] Plaintiffs filed another amended complaint. The "Third Amended Complaint" ("CMPT3") joined two additional parties, Pioneer Electronic Corporation ("PEC") and Pioneer Electronics Service, Inc. ("PES"). (Pls.' Reply to Defs.' Resp. to Pls.' Mot. for Remand at 6; CMPT3.)[2] PES was served with the Third Amended Complaint on May 13, 1993. (Aff. of Serv., see Ex. B to Pls.' Mot. for Remand.) PEC was served on June 10, 1993. (Resp. of Pioneer Electronics Service, Inc., Pioneer Communications of America, Inc., and Pioneer Electronic Corporation to Pls.' Mot. to Remand at n. 1.)

PES filed a Notice of Removal on June 10, 1993, twenty-eight days after being served. The Notice of Removal stated that the action was removable pursuant to 28 U.S.C. § 1441(a) and (b) and 28 U.S.C. § 1332 based on this Court's diversity jurisdiction. (Notice of Removal at ¶ 2.) The Notice indicated that PEC had not yet been served with Plaintiffs' Third Amended Complaint, but that both PEC and PCA had been contacted by PES' attorney and had no objection to removal. (Notice of Removal at ¶ 3.) The

Notice of Removal was signed by PES. PCA and PEC subsequently filed Consents to Removal with this Court on August 30, 1993 and July 12, 1993, respectively.

### *Jurisdiction*

■ This Court has jurisdiction over a removed case if the case could have been brought in federal court initially. 28 U.S.C. § 1441(a) (1993 Supp.); *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366 (7th Cir. 1993); *Grubbs v. General Elec. Credit Corp.*, 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972). Jurisdiction must exist at the time of removal. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938); *Shaw*, 994 F.2d at 368.

The Court has personal jurisdiction over this matter based on diversity of citizenship under 28 U.S.C. § 1332.[3] According to Defendant PES's representations, Plaintiffs are citizens of the State of Illinois, Defendants PES and PCA are Delaware corporations with principal places of business in Long Beach, California, and Defendant PEC is a Japanese corporation. (Notice of Removal at ¶ 2.) Inasmuch as Plaintiffs have not challenged those representations, the Court will take them as true and thus finds the requisite diversity of citizenship. *See* 28 U.S.C. § 1332(a)(1).

The Court also finds that the amount in controversy is sufficient to support jurisdiction despite the fact that the complaint itself specifies only that damages exceed $30,000. CMPT3.[4] Defendant PES points out that

---

1. PCA indicated in its initial answer to the Second Amended Complaint that it was, in fact, the manufacturer and distributor of the converter/box in question. (Pls.' Reply to Defs.' Resp. to Pls.' Mot. for Remand at 6.) According to Plaintiffs' reply brief, Plaintiffs did not learn the identity of the "correct defendants," PES and PEC, until PCA filed answers to Plaintiffs' interrogatories. *Id.*

2. Although PCA's initial answer to Plaintiff's Second Amended Complaint indicated PCA had manufactured and distributed the converter/box in question, (Pioneer Communications of America's Answer to Second Amended Compl. at Law, ¶ 3, filed Oct. 8, 1992), PCA later indicated in its answers to Plaintiffs' Interrogatories that it had

not designed, manufactured, or assembled the equipment, and identified Pioneer Electronic Corporation as the manufacturer and Pioneer Electronics Service, Inc. as the modifier of the equipment. (Defs.' Answers to Pls.' Interrogs., Answers to Interrogs. Nos. 11, 12, 17, 19.)

3. Jurisdiction is undisputed in this case, save for Plaintiff's procedural challenges.

4. Although a plaintiff is in the best position to know how much a claim is worth, *Shaw*, 994 F.2d at 366; *St. Paul Mercury*, 303 U.S. at 288, 58 S.Ct. at 590, a tort claimant in Illinois may not specify exact damages beyond the limit set by the local circuit court rule. Ill.Rev.Stat. ch. 110, para. 2–604 (1992 Supp.).

Plaintiffs' complaint alleges that Carol Eltman was severely burned and Charles Eltman died as a result of Defendants' product. Notice of Removal, ¶ 2. Given those allegations, it is reasonably probable that the amount in controversy exceeds the jurisdictional requirement of $50,000.[5] Defendants thus have met their burden of proving the sufficiency of the amount in controversy. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921); *Shaw*, 994 F.2d at 366.

### Discussion

■ Under the removal statute, a defendant or defendants wishing to remove a case to federal court must file a notice in the appropriate district court that includes a "short and plain statement of the grounds for such removal."[6] Subsection 1446(b) sets forth the time limits:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b) (1992 Supp.). A removed matter must be remanded if there are any defects in the removal procedure. *Shaw*, 994 F.2d at 366; *In re Amoco Petroleum Additives Co.*, 964 F.2d 706, 708 (7th Cir. 1992).

■ Generally, all defendants must join in a removal petition or consent to such removal within the thirty-day time limit established by subsection 1446(b). *Shaw*, 994 F.2d at 368; *Chicago, Rock Island & Pac. Ry. Co. v. Martin*, 178 U.S. 245, 248, 20 S.Ct. 854,855, 44 L.Ed. 1055 (1900); *Northern Ill. Gas Co. v. Airco Indus. Gases*, 676 F.2d 270, 272 (7th Cir.1982). A petition is defective if it does not explain why the other defendants failed to consent to the removal. *Shaw*, 994 F.2d at 368; *Northern Ill. Gas Co.*, 676 F.2d at 273.

■ Plaintiffs first challenge Defendants' Notice of Removal on the ground that PEC and PCA's consent was improper.[7] The crux of Plaintiffs' argument (setting aside for a moment the timeliness issue) is that nonpetitioning defendants' consent to removal cannot be manifested under section 1446 simply through representations by the petitioning defendant in the Notice of Removal. (Pls.' Reply to Defs.' Resp. to Pls.' Mot. for Remand at 2–3.)

The Court finds that PES' Notice of Removal is not defective for lack of proper consent by PEC. Nonjoinder of PEC does not make the notice defective. The Seventh Circuit recognizes an exception to the joinder/consent rule for defendants who have not been served at the time the removal petition is filed, *P.P. Farmers' Elevator Company v. Farmers Elevator Mutual Insurance Co.*, 395 F.2d 546, 547–48 (7th Cir.1968), and PEC was not served until June 10, 1993. Furthermore, PES did explain PEC's absence and convey PEC's consent.

---

5. In cases involving the federal courts' diversity jurisdiction, the defendant must show to a reasonable probability that the amount in controversy is more than $50,000. *Shaw*, 994 F.2d at 366–67 & n. 2 (interpreting the preponderance of the evidence standard established in *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936)).

6. Subsection 1446(a) provides that
   [a] defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Procedure and contain-

ing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.
   28 U.S.C. § 1446(a) (1992 Supp.)

7. Plaintiffs initially argued that removal was improper because PEC and PCA had not joined in or consented to removal, stating that it was "aware of no pleadings filed on behalf of these defendants which confirm PES's otherwise unsubstantiated claims." Motion for Remand, at 1–2. The Court notes that subsequent to Plaintiffs' motion, both PCA and PEC filed formal consents with the Court.

The fact that PEC was served the same day does not make the exception inapplicable. Even if PEC were, strictly speaking, served before PES filed, PEC could not be expected to formally consent or join in on such short notice. *See Milstead Supply Co. v. Casualty Ins. Co.*, 797 F.Supp. 569, 573 (W.D.Tex.1992) (defendant who was served three hours before another defendant filed removal papers need not have consented to or joined in the removal petition). (Notice of Removal at ¶ 3.) [8]

■ The Court finds that PCA's failure to join in the Notice of Removal is excused as well. Nominal or formal parties need not join in removal. *Ryan v. State Bd. of Elections of the State of Ill.*, 661 F.2d 1130, 1134 (7th Cir.1981). PEC appears to be a nominal party.[9] First, and most critically, Plaintiffs characterize *PEC and PES* as the "correct defendants" in their own pleadings. (Pls.' Reply to Defs.' Resp. to Pls.' Mot. for Remand at 6.) Furthermore, it appears that PCA may be insulated from Plaintiffs' strict liability claim under Illinois law. *See* Ill.Rev. Stat. ch. 110, para. 2–621.[10]

Even if this Court were to find that the Notice of Removal was defective at the time it was filed as a result of PEC and PCA's failure to join or consent, any such defect was ultimately cured when PCA and PEC filed their consents with this court on August 30, 1993, and July 12, 1993, respectively. The question then is whether or not the consents were timely, given section 1446(b)'s thirty-day time limit and, if they were not, whether the Court should consider them at all.

PEC's formal consent was timely. As noted above, PEC was not served until June 10, 1993. PEC filed its Consent to Removal within thirty days of being served.[11]

Regardless of whether one accepts Plaintiffs' view or Defendants' view of when the thirty day period commences, PCA's consent was untimely. It was filed more than a year after PCA was served with the Second Amended Complaint. It was filed more than thirty days after PES was served with the Third Amended Complaint.

■ Although the thirty-day time limit is "a strictly applied rule of procedure," *Northern Ill. Gas*, 676 F.2d at 273, the Court need not slavishly adhere to that limit if circumstances so justify. *See Shaw*, 994 F.2d at 369. The time limit is not jurisdictional. *Id.* (citing *Ryan v. State Bd. of Elections of the State of Ill.*, 661 F.2d 1130, 1134 (7th Cir. 1981)). Furthermore,

> [A]mendments to correct 'defective allegations of jurisdiction' are permitted under 28 U.S.C. § 1653 at any time. 'The question is whether [the petition for removal] was so defective as to be incurable.' *Kinney v. Columbia Savings & Loan Ass'n*, 191 U.S. 78, 80, 24 S.Ct. 30, 31, 48 L.Ed. 103 (1903). In this determination the court may look at the entire record of state court proceedings. *Powers v. Chesapeake*

---

**8.** Plaintiffs maintain that the Notice of Removal is fatally defective because Rule 11 does not cure PEC's failure to formally convey its joinder or consent to this Court within the requisite time frame. Plaintiffs cite numerous cases for the proposition that Rule 11 does not eliminate the need for nonpetitioning defendants to convey consent directly to the court. Because PEC's nonjoinder is excused under *P.P. Farmers' Elevator Co.*, the Court does not reach this issue.

**9.** Although the record is not well-developed enough at this stage to determine definitively whether or not PCA is a nominal party, the Court is unwilling to go against Plaintiffs' own characterization of the defendants, especially because PCA did subsequently consent to removal.

**10.** The Illinois Distributor Statute requires a court to order a dismissal of a strict liability in tort claim against a named defendant who is not the product's manufacturer once the plaintiff has filed a complaint against the manufacturer, unless the nonmanufacturer exercised significant control over the design or manufacture of the product, provided warnings or instructions relative to the alleged defect, had actual knowledge of the alleged defect, or created the alleged defect. Ill.Rev.Stat. ch. 110, para. 2–621 (1992 Pocket Part). Thus, PCA would be insulated from any strict product liability-based liability under Illinois law unless Plaintiffs adduce evidence that shows that PCA fits within one of the exceptions.

**11.** The July 12th filing was timely because the thirtieth calendar day fell on a Saturday. *See* Fed.R.Civ.P. 6(a).

*& Ohio Ry. Co.,* 169 U.S. 92, 101, 18 S.Ct. 264, 267, 42 L.Ed. 673 (1898). *Shaw,* 994 F.2d at 369.

*Shaw* addressed the issue of whether an untimely explanation for co-defendants' absence from a removal petition should be allowed. *Shaw,* 994 F.2d at 368. Plaintiff in that case filed a state law product liability against two manufacturers, their parent companies, and the retailer. *Shaw,* 994 F.2d at 365. One defendant removed to federal court. *Id.* Only that defendant signed the removal petition; no explanation as to the absence of the other defendants was offered in the petition. *Id.* at 368. The removing defendant later submitted an affidavit purporting to explain the other defendants' absence.[12] *Id.*

The Seventh Circuit held that jurisdiction was proper, despite the petition's apparent defects. *Id.* at 369. The Court concluded that

> [the petitioning defendant's] petition was plainly sloppy in not explaining what happened to the other defendants, but ... since the absence of the other defendants is justified ... we are not willing to punish [the petitioning defendant] for what is, after all, a technicality that doesn't go to the heart of jurisdiction.

*Id.*

The Seventh Circuit's discussion of what constitutes a justifiable absence—and hence what transforms a defect into a "technicality"—is relevant to the issue before this Court. The Seventh Circuit excused the absence of one defendant on the ground that it had not been served when the removal petition was filed. *Id.* The court excused the absence of another defendant because it was a nominal party:

> [i]t is unclear whether parent corporations are per se nominal parties. But in this case, [the absent defendant] had no connection with the manufacture, sale or distribution of [the allegedly harmful product]; it engaged in no independent wrongdoing but was joined solely because of the

acts of its subsidiary. In any event, counsel for [the petitioning defendant] has sworn in an affidavit—undisputed by Shaw—that it had obtained Shaw's agreement to dismiss [the absent defendant] voluntarily before removal and that, *in any event, [the absent defendant] consents to removal.*

*Id.* (emphasis added).

The circumstances here are strikingly similar. The pleadings and PCA's answers to interrogatories reveal that PCA is not the manufacturer and is probably a nominal party under Illinois law. PCA is not even viewed as the correct defendant by the Plaintiff.

Consistent with the Seventh Circuit's position, the Court holds that, even if the Notice of Removal were defective as a result of PCA's failure to join in, PCA's formal consent, untimely as it was, cures the defect. The petition for removal is not incurably defective under the reasoning in *Shaw.* PCA's formal consent, like the affidavit in Shaw, is admissible to cure any defect in the Notice of Removal.

■ Plaintiffs' second argument in support of remand—that the Notice of Removal itself was untimely—presents a more difficult question. Plaintiffs argue that PES is barred from removing the matter to this Court because PCA failed to exercise its right to remove in a timely fashion. (Pls.' Reply to Defs.' Resp. to Pls.' Mot. for Remand at 4.) In essence, Plaintiffs' position is that section 1446(b) imposes a mandatory first-served defendant rule. According to Plaintiff, section 1446(b) bars a later-served defendant from removing a case to federal court when an earlier-served defendant fails to exercise its right to remove within the statutory period *even if the later-served defendant was not named during the initial thirty-day period.* PES challenges that interpretation, arguing that such an interpretation is inequitable. (Resp. of Pioneer Electronic Service, Inc., Pioneer Communications of America, Inc. and Pioneer Electronic Corporation to Pls.' Mot. for Remand at 9–10.)

---

12. Although the removal petition was defective on its face, the jurisdictional issue was not raised by either party or the district court until shortly before oral argument on the appeal. The explanation thus was not offered until well after the thirty-day period for removal had elapsed.

Section 1446(b) provides that notices of removal must be filed "within thirty days after the receipt by the defendant" of a copy of the complaint or a summons, but does not address application of the time limit to a multiple-defendant case. 28 U.S.C. § 1446(b). Most cases applying the time limit to multiple defendant cases hold that a first-served defendant's waiver of its right to remove bars removal by later-served defendants, but those cases tend to deal with situations involving co-defendants who are named at the same time. *See, e.g., Ortiz v. General Motors Acceptance Corp.,* 583 F.Supp. 526, 529 (N.D.Ill.1984); *Grzetich v. VLI Corp.,* 670 F.Supp. 793, 794 (N.D.Ill. 1987).

The treatises disagree on the proper approach. Wright, Miller, and Cooper take the position that a later-served defendant should be allowed to remove so long as he acts within thirty days of being served.

> [W]hen some of the defendants are served after the first defendant served has waived the removal right by not exercising it within the statutory period, the subsequently served defendants are deprived of the opportunity to persuade the first defendant to join in the removal petition.

14A Charles C. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure,* § 3732, at 531–32. Moore takes the opposite position. 1A James Wm. Moore, Brett A. Ringle, & Jeremy C. Wicker, *Moore's Federal Practice,* ¶ 0.168[3.–5–5] at 586–587 (2d ed. 1992) (subsequently served defendant cannot remove if earlier served defendant fails to remove within thirty-day time limit).

After carefully considering the cases interpreting the thirty-day time limit, the policies that inform that time limit, and the implications of Plaintiffs' proffered interpretation, the Court declines to adopt the mandatory first-served defendant rule advanced by Plaintiffs. The policies behind the thirty-day requirement simply do not justify implication of a strict, mandatory first-served defendant rule into section 1446(b). More importantly, even if barring removal by a later-served defendant is justified in certain circumstances, it is unjustified and inequitable when

the later-served defendant is not named until the initial thirty-day period has lapsed.

According to the Seventh Circuit,

> [t]he purpose of the 30–day limitation is two-fold: to deprive the defendant of the undeserved tactical advantage that he would have if he could wait and see how he was faring in state court before deciding to remove the case to another court system; and to prevent the delay and waste of resources involved in starting a case over in a second court after significant proceedings, extending over months or even years, may have taken place.

*Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n,* 668 F.2d 962, 965 (7th Cir.1982).

Allowing a later-named defendant to remove despite the inaction of an earlier-named defendant would not defeat section 1446(b)'s purposes. Such removal does not start the case over because there is no case against the later-named defendant until he is named. There is no waste because judicial resources have not yet been expended. There is no delay because the case against that defendant has just begun. And there is no jockeying for tactical advantage because the "lateness" of the removal petition is due to the fact that the *plaintiff* did not name that defendant earlier.

With regard to the case at bar, granting Plaintiffs' motion to remand would in no way further the purposes of the thirty-day limit. The Court would not be protecting Plaintiff against an "undeserved tactical advantage." PES has not been sitting back assessing its chances in state court. Nor would such action save judicial resources or prevent delay. No significant proceedings have taken place in state court. No depositions have been taken; no contested motions have been presented for adjudication. (Resp. of Pioneer Electronics Service, Inc., Pioneer Communications of America, Inc. and Pioneer Electronic Corporation to Pls.' Mot. to Remand at 9 & n. 4.) Thus, the purposes behind section 1446(b) simply do not justify remanding this case.

The infirmity of the Plaintiffs' interpretation does not end there. The rule proposed

by Plaintiffs could have the ironic consequence of tending to disenfranchise the very defendants who have the most at stake. The inequities involved go well beyond those identified by Wright, Miller, and Cooper with respect to latter-served defendants.

Identifying the proper defendant in a products liability action is often a difficult task. Plaintiffs are allowed more than one bite at the apple. They can amend their complaints as they refine their information regarding the identity of the correct defendant. As a result, a later-named defendant may very well be the defendant with the most at stake.

It is unreasonable and unjust to punish a later-named defendant simply because the plaintiff took longer than thirty days to identify and join all possible defendants and the earliest-named defendant sat on her rights. This is especially so when the earliest-named defendant's inaction may be due to a perceived lack of liability.[13]

The history of this very matter illustrates the inequities of Plaintiffs' proposed interpretation. Plaintiffs named one defendant in an initial complaint, only to dismiss their complaint against that entity and name a second entity in an amended complaint. After almost a year had elapsed, Plaintiffs obtained information suggesting that entities other than the named defendant had manufactured the product. Plaintiffs then joined those entities, believing they were the "correct defen-

dants." (Pls.' Resp. to Defs.' Reply to Pls.' Mot. for Remand at 6.) Application of Plaintiffs' proposed interpretation of the removal requirements would prevent the defendants with the most real risk from exercising their right to remove to federal court despite the fact that it was Plaintiffs' delay in naming them that caused the alleged untimeliness.[14]

The Court holds that PES's Notice of Removal was timely notwithstanding PCA's failure to exercise its own right to remove. In so holding, this Court adopts, in those cases involving later-named defendants, the approach advanced by Wright, Miller, and Cooper and adopted by the District Court in *Garside by Garside v. Osco Drug, Inc.* 702 F.Supp. 19, 21–22 (D.Mass.1988) (explicitly adopting the Wright, Miller, and Cooper approach and holding that a subsequently served defendant has thirty days to seek removal).[15]

### *Conclusion*

The Court finds that PCA and PEC properly consented to the removal of this action to federal court. The Court further finds that the Notice of Removal was timely, and otherwise in accordance with the procedural requirements of 28 U.S.C. § 1446. For the reasons stated above, Plaintiff's Motion to Remand is denied.

---

**13.** The rationale for allowing a later-named defendant to remove despite the inaction of the first-named defendant is similar to the rationale supporting the right of revival exception to the thirty-day rule. The right of revival exception is available when a plaintiff files "an amended complaint that so changes the nature of his action as to constitute 'substantially a new suit begun that day.'" *Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n,* 668 F.2d 962, 965 (7th Cir.1982) (quoting *Fletcher v. Hamlet,* 116 U.S. 408, 410, 6 S.Ct. 426, 427, 29 L.Ed. 679 (1886); and citing 14 Wright, Miller & Cooper, Federal Practice and Procedure § 3732, at 727–29 (1976), and cases cited therein.) With regard to the right of revival exception, the Seventh Circuit reasoned that

[a]mendments might fundamentally alter a complaint not because the plaintiff had been trying to mislead the defendant but because new facts had come to light in the course of pretrial discovery. In such a case—where the

amended complaint in effect begins a new case—using the 30–day limitation in section 1446(b) to bar removal would not serve the purposes of the limitation in any significant way.
*Id.*

**14.** The Court does not mean to imply by its observations that Plaintiffs acted in bad faith or intentionally attempted to circumvent the removal statute, nor is the Court suggesting that any Defendant present in this case is more or less liable.

**15.** The Court recognizes that in certain instances it may not be appropriate to allow the later-named defendant to remove the action. The rationale for preserving the later-served defendant's removal right would not apply, for example, in instances when defendants are actually part of the same operating entity rather than separate and distinct entities.