YELLOW CAB COMPANY OF
PITTSBURGH, a Corporation,
Plaintiff,

v.

Carl GASPER, an Individual, Gasper
Transportation Company, a Corporation,
Carriage Limousine Service, a Corporation,
Landmark Transportation Services,
Inc., a Corporation, Defendants.

No. CIV. A. 97–1390.

United States District Court,
W.D. Pennsylvania.

Feb. 9, 1998.

Dorothy A. Davis, Herbert B. Conner, Buchanan Ingersoll, Pittsburgh, PA, for Plaintiff.

Richard F. Andracki, Jones, Gregg, Creehan & Gerace, Pittsburgh, PA, Dennis J. Kusturiss, William A. Gray, Vuono, Lavelle & Gray, Pittsburgh, PA, for Defendants.

## MEMORANDUM OPINION AND ORDER

D. BROOKS SMITH, District Judge.

This is a trademark and unfair competition dispute between Yellow Cab Company and one of its competitors. It arises largely out of a television commercial which depicted passengers in a Yellow Cab being subjected to an unpleasant, unsafe and untimely journey while passengers in the competitor's limousine enjoyed a safe, comfortable, luxurious trip. Yellow Cab filed suit in the Court of Common Pleas of Allegheny County, where a preliminary injunction was entered and where defendants' preliminary objections were for the most part denied. Defendants then removed the action to this court; presently before me is plaintiff's motion to remand. For the following reasons, I will grant the motion.

I.

Yellow Cab has a long history of providing taxicab service in the Pittsburgh area which needs no extensive recitation, except to recount that it holds the exclusive franchise to provide service for trips originating at Greater Pittsburgh International Airport. Defendants Landmark and Carriage operate a luxury-oriented "executive" service using vans and Lincoln Town Cars to provide "on-call"

transportation services to their customers. Defendant Gasper Transportation Company ("GTC") is a recently formed holding company which holds all the stock of Landmark and Carriage. Defendant Carl Gasper is the President of all three corporate defendants.

According to plaintiff, defendants "falsely and disparagingly portray[ed] Yellow Cab in a negative light, orally and in various media ..., with actual intent to deceive and to cause pecuniary loss to Yellow Cab." Plaintiff specifically takes exception to a "particular commercial video advertisement in which a vehicle in the trade dress of a Yellow Cab was purportedly [traveling] from the Greater Pittsburgh International Airport to downtown Pittsburgh...." Plaintiff contends that this advertisement, which was allegedly displayed on the "Jumbotron" screen at Pittsburgh Penguins hockey games and on at least one local television station, "put Yellow Cab in a false light, disparaged, defamed, infringed upon and diluted the distinctive quality of the famous Yellow Cab trade names, marks and dress, in violation of the Lanham Act, the Pennsylvania Trademark Protection Act, and the Pennsylvania law of unfair competition, commercial disparagement, defamation, and tortious interference with prospective business relations." Dkt. no. 5, at 1–2 (citations omitted). Defendants, of course, deny any wrongdoing.

On February 26, 1997, plaintiff commenced this action against defendants Carriage and Landmark in state court. On or about March 31, that court issued a preliminary injunction enjoining those defendants from broadcasting the offending advertisement. Defendants then filed preliminary objections, in accordance with state practice, on or about April 9. These were denied in substance by the court on May 27, although one procedural objection was granted and plaintiff was required to amend its complaint to place its state and federal law trademark claims in separate counts.

Meanwhile, some discovery had taken place and plaintiff learned that Mr. Gasper had subsequently transferred all of the capital stock of Carriage and Landmark to a new entity he created, GTC, and of which he is an officer, director and sole shareholder. When plaintiff amended its complaint on July 14, it joined GTC and Mr. Gasper as additional defendants; these new defendants were served with the complaint two days later. Attorney Richard F. Andracki entered an appearance on behalf of all defendants, including Carriage and Landmark, on July 30. That same day, he filed a notice of removal to this court based on the presence of plaintiff's federal trademark claim. All defendants purportedly consented to the removal. On August 28, plaintiff filed the instant motion to remand.

## II.

Plaintiff asserts that defendants' attempt at removal is untimely. I begin my analysis with the axiomatic proposition that "[t]he removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990) (quoting *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir.1987)). The removing party bears the burden of demonstrating that removal was proper. *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 359 (3d Cir.1995). Under the removal statute:

> The notice of removal in a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based....

28 U.S.C. § 1446(b). It is well-settled, although not explicitly set forth in the statute, that all defendants must join in any petition for removal; this is known as the "rule of unanimity." *E.g., Chicago, R.I. & P. Ry. Co. v. Martin*, 178 U.S. 245, 248, 20 S.Ct. 854, 44 L.Ed. 1055 (1900); *Ogletree v. Barnes*, 851 F.Supp. 184, 186 (E.D.Pa.1994); *Balestrieri v. Bell Asbestos Mines, Ltd.*, 544 F.Supp. 528, 529 (E.D.Pa.1982), (citing cases); *Crompton v. Park Ward Motors, Inc.*, 477 F.Supp. 699, 701 (E.D.Pa.1979) (citing cases).

The difficulty in this case stems from the fact that two of the defendants were joined and served more than thirty days after the first defendant was served. The question

then arises whether a previously served defendant which did not initially seek removal within thirty days of service upon it of the original complaint may join the removal petition of a new defendant joined outside that thirty-day period. The Third Circuit has not yet decided this question. The statute, speaking as it does only of a singular defendant, provides little guidance, and the two principal treatise writers on federal procedure are split on the issue. Wright and Miller believe that removal in such circumstances should be permitted:

> Because of the requirement that all properly served defendants who are not purely nominal must join in the petition for removal, some district courts have held that failure of the first defendant served to file a petition for removal within thirty days of service will prevent all subsequently served defendants from removing the action. Since one defendant always can preclude removal by refusing to join in the removal petition, this result is not unfair when all of the defendants are served simultaneously. However, when some of the defendants are served after the first defendant served has waived the removal right by not exercising it within the statutory period, the subsequently served defendants are deprived of the opportunity to persuade the first defendant to join in the removal petition.

14A Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, *Federal Practice & Procedure* § 3732, at 531–32 (2d ed.1985). Moore, in contrast, takes the opposite view:

> In general, if a case involves multiple defendants and the case is removable at that time, the 30–day removal period begins to run when the first defendant is served. If that defendant does not remove the case within 30 days, a majority of courts hold that the right to remove is waived and subsequently served defendants cannot remove. Thus, any defendant who is served more than 30 days after the initial defendant is served is effectively banned from removing the case. However, some courts hold that this rule penalizes those defendants that are served after the others, and these courts calculate the

30–day period separately for each defendant.

. . .

> The courts taking the less-strict approach ... are understandably concerned with the unfairness of allowing the served defendants' failure to remove to deprive other defendants—who do not know about the action—of their right to seek removal. . . .

> However, this less-strict approach is inconsistent with the general interpretive principle that the removal statutes should be applied strictly against removal. It may also reflect the reality that in many cases, given that there must be agreement on the part of all defendants to remove, if the initially filed defendants failed to seek removal, it may be because they were satisfied with the state court forum, and that they therefore may not agree to remove when the later served defendants seek their approval to remove.

16 James W. Moore, *Moore's Federal Practice* § 107.30[3][a][C] (3d ed.1997); *accord* 1A James W. Moore, *Moore's Federal Practice* ¶ 0.168[3.–5–5], at 585–87 (2d ed.1996).

The majority of courts to reach this issue have concluded that the thirty-day clock begins to run when the first defendant is served, and that such a defendant cannot later consent to a removal petition brought by a later-served codefendant. *See, e.g., McKinney v. Board of Trustees of Mayland Comm. Coll.*, 955 F.2d 924, 926 n. 3 (4th Cir.1992) (allowing removal when *first*-served defendant removes within thirty days and later-served defendant consents within thirty days of the later service date, but opining that cases in which the later-served defendant is served more than thirty days after the first-served defendant are not removable); *Cantrell v. Great Republic Ins. Co.*, 873 F.2d 1249, 1254–55 (9th Cir.1989); *Getty Oil Corp. v. Insurance Co. of N. Am.*, 841 F.2d 1254, 1262–63 (5th Cir.1988); *Brown v. Demco, Inc.*, 792 F.2d 478, 481–82 (5th Cir.1986) (adopting Moore's view and disagreeing with Wright & Miller's conclusion that such a rule is unfair to later-served defendants); *McShares, Inc. v. Barry*, 979 F.Supp. 1338,

1343–44 & n. 2 (D.Kan.1997) (citing cases); *Higgins v. Kentucky Fried Chicken,* 953 F.Supp. 266, 268–70 (W.D.Wis.1997) (citing cases); *Bazilla v. Belva Coal Co.,* 939 F.Supp. 476, 478–79 (S.D.W.Va.1996); *Henderson v. Holmes,* 920 F.Supp. 1184, 1187–88 n. 3 (D.Kan.1996); *Kuhn v. Brunswick Corp.,* 871 F.Supp. 1444, 1447 (N.D.Ga. 1994); *Whisenant v. Roach,* 868 F.Supp. 177, 178 (S.D.W.Va.1994) (noting that subsequently joined insurer defendant had full knowledge of the action's pendency from its inception); *Scialo v. Scala Packing Co.,* 821 F.Supp. 1276, 1277–78 (N.D.Ill.1993); *Martin Pet Products (U.S.), Inc. v. Lawrence,* 814 F.Supp. 56, 57 (D.Kan.1993); *D. Kirschner & Sons, Inc. v. Continental Cas. Co.,* 805 F.Supp. 479, 481 (E.D.Ky.1992); *Noble v. Bradford Marine, Inc.,* 789 F.Supp. 395, 397 (S.D.Fla.1992); *Samura v. Kaiser Found., Health Plan, Inc.,* 715 F.Supp. 970, 971 (N.D.Cal.1989); *Schmidt v. National Org. for Women,* 562 F.Supp. 210, 212 (N.D.Fla.1983).

A few courts, however, have come to the opposite conclusion. In *Garside v. Osco Drug, Inc.,* 702 F.Supp. 19 (D.Mass.1988), a medical patient filed suit against a drugstore and a pharmaceutical manufacturer. Four years after these defendants were served, she amended her complaint and joined a second pharmaceutical company, which within thirty days removed the case to federal court with the consent of its codefendants. *Id.* at 20. That defendant then changed its mind and challenged its own removal petition as untimely. *Id.* The court analyzed the competing approaches to the question of timeliness and concluded that the Wright & Miller view was "the more practical and enlightened." *Id.* at 22. It thus held "that a subsequently served defendant has thirty days to seek removal, even though its co-defendants may be time-barred from doing so." *Id.* It opined:

> Moore's premise would seem to assume that the previously served defendant's failure to remove the case originally indicates that it would not have consented to removal had the two defendants been served simultaneously. In making that assumption, Moore does not give adequate weight to the interplay that often occurs in multiparty litigation. In practice, removal is

often as much a matter of trial strategy as it is one of forum selection.

*Id.* at 21. The court found this result particularly compelling when the defendant, after the case had been assigned to a specific district judge, assailed its own removal petition with a possible forum-shopping motive. *Id.* at 22.

Likewise, in *Eltman v. Pioneer Communications,* 151 F.R.D. 311 (N.D.Ill.1993), plaintiff's decedent sued an electronics manufacturer and several of its subsidiaries for products liability, serving various entities over the space of more than one year. *Id.* at 312–13. One of the later-served subsidiaries then filed a notice of removal twenty-eight days after it was served. *Id.* at 313. In denying the motion to remand for untimeliness, the court noted the majority rule but declined to apply it, stating:

> The policies behind the thirty-day requirement simply do not justify implication of a strict, mandatory first-served defendant rule into section 1446(b). More importantly, even if barring removal by a later-served defendant is justified in certain circumstances, it is unjustified and inequitable when the later-served defendant is not named until the initial thirty-day period has lapsed.

*Id.* at 317. The court then recounted the two principles underlying the thirty-day rule—depriving the defendant of the opportunity to see how it was faring in state court before deciding whether to remove and preventing waste of judicial resources arising from having to start the case over again in federal court after significant proceedings had occurred in state court, *id.* (quoting *Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n,* 668 F.2d 962, 965 (7th Cir.1982))—and concluded that neither purpose would be served by applying the majority rule on the facts of the *Eltman* case:

> Allowing a later-named defendant to remove despite the inaction of an earlier-named defendant would not defeat section 1446(b)'s purposes. Such removal does not start the case over because there is no case against the later-named defendant until he is named. There is no waste because judi-

cial resources have not yet been expended. There is no delay because the case against that defendant has just begun. And there is no jockeying for tactical advantage because the "lateness" of the removal petition is due to the fact that the *plaintiff* did not name that defendant earlier.

151 F.R.D. at 317.

Finally, in *Collings v. E–Z Serve Convenience Stores, Inc.*, 936 F.Supp. 892 (N.D.Fla.1996), plaintiff sued her employer in state court in November 1994, alleging retaliatory discharge in violation of the Fair Labor Standards Act. In April 1996, she amended her complaint to add an individual defendant, who petitioned for removal less than a month later. *Id.* at 893. That court also denied the motion to remand, reasoning:

> Allowing the initially served defendant the choice of whether to remove, but binding that decision on later-joined defendants leads to inequitable results. Courts favoring the rule which bars later-served defendants from removing argue that it is unfair to the plaintiff to allow a later-joined defendant to remove. This argument is unpersuasive because it is the plaintiff who has chosen to join the new defendant to the lawsuit, not the later joined defendant.

*Id.* at 895 (citations omitted).

■ I need not decide which line of cases represents the better view in general, as the instant case is readily distinguishable from even the authority upon which defendants rely. It must be remembered that all of the entities joined as defendants in the case *sub judice* are closely held corporations owned and controlled by one man, defendant Carl Gasper. Thus, *Garside* is inapposite because there, the later-joined pharmaceutical company had no notice of the pendency of the state court action until it was finally joined as a defendant. The "interplay" between multiple defendants that concerned that court is simply not present here, where it falls to one man—Gasper (and his counsel)—to make strategic and tactical decisions involving litigation strategy.

*Collings* also is not on point. As in *Garside*, there is no indication that the later-joined individual defendant was closely related to the corporate defendant so as to have actual or constructive notice of the proceedings, or control over the litigation strategy employed in them by the corporate defendant. Moreover, in the instant case it cannot fairly be said that it was somehow the plaintiff's fault that the later-joined defendant was not named earlier. GTC, after all, was formed by Gasper shortly after this litigation began, its existence came to light only during discovery, and plaintiff was compelled by these changed circumstances to amend its complaint to ensure that all potentially liable parties were joined as defendants.

*Eltman* is the case which most strongly supports defendant's position, and, in a superficial sense, it does seem to disfavor a remand in this case. On closer inspection, however, it is inapposite as well. There, plaintiffs initially sued Pioneer Electronics in June 1992. 151 F.R.D. at 312. In August, in what the court referred to as "Plaintiffs' continuing effort to identify the proper defendant or defendants," *id.*, plaintiff amended its complaint to join another defendant, PCA; it then voluntarily dismissed Pioneer Electronics in November. Discovery subsequently took place, which led plaintiff to amend yet again, serving new defendants PEC and PES in May and June 1993, respectively. PES then filed a notice of removal twenty-eight days after being served. *Id.* at 313. The issue, then, was whether PCA's decision not to remove within thirty days of its being served precluded PES from doing so later.

The *Eltman* court noted that PCA was only a nominal party which could not be held liable under state law. *Id.* at 315 & n. 9, 316.[1] As such, it was not even required to join in a petition for removal. *Ogletree*, 851 F.Supp. at 187, 14A Wright *et al., supra*, § 3731, at 507–08. Thus, its failure to do so did not violate the rule of unanimity and thereby preclude PES from removing, as

---

1. The court initially referred to PEC, not PCA, as the nominal party. *Id.* at 315. Nevertheless, the context and subsequent discussion in the opinion all name PCA as the nominal party, leading to the conclusion that the initial reference to PEC was a typographical error and that the court meant to refer to PCA.

long as PES did so within thirty days of when it was served.

Although the *Eltman* court recognized this, it went on to discuss plaintiffs' alternate argument that the first-served defendant must exercise its right to remove within thirty days of the date on which it was served. *Id.* at 316.[2] As quoted above, the court sided with the Wright and Miller view that the later-joined defendant should be permitted to remove even if the earlier-joined defendant waived that right initially. Underlying its holding was the fact that *Eltman* was a products liability action against a multinational electronics concern with many separately managed subsidiaries located around the world. Until the proper subsidiary was discovered, located, joined and served, the merits of plaintiffs' case could not be adjudicated. Indeed, the *Eltman* court recognized the limited reach of its decision:

> The Court recognizes that in certain instances it may not be appropriate to allow the later named defendant to remove the action. The rationale for preserving the later-served defendant's removal right would not apply, for example, in instances when defendants are actually part of the same operating entity rather than separate and distinct entities.

151 F.R.D. at 318 n. 15.

Thus, in *Eltman* there was no possibility of wasted judicial resources or undue delay that could arise from moving the case from state to federal court a year or more after it was initially filed. Likewise, because no proceedings of substance could occur until the "correct" defendant was before the court, there was no opportunity for the defendants to engage in legal gamesmanship or forum-shopping by waiting to see how they were faring in state court before deciding whether to remove.

In the case at bar, the corporate entities are all closely held and controlled by one of the defendants, Carl Gasper, which militates strongly in favor of applying the majority rule and remanding the case. *See id.* at 318 n. 15; *Higgins,* 953 F.Supp. at 270. Those

entities are, moreover, all represented by the same counsel. Of considerable significance, in this court's view, is that proceedings of substance on the merits have already taken place, resulting in the issuance of a preliminary injunction and the denial of preliminary objections. Indeed, there is currently a motion pending to hold defendants in contempt of the state court's preliminary injunction. *See* dkt. no. 12. Thus, removing this case at this juncture would entail a significant waste of scarce judicial resources, could effectively give defendants an unfair opportunity to relitigate issues already decided by the Court of Common Pleas, and would require this court's involvement in enforcing and vindicating an injunction issued by the other tribunal.

In sum, this case was removable from the first day it was filed in state court, and Mr. Gasper and his counsel were on notice of that fact as soon as the first defendant was served with the complaint. Yet, they chose not to remove the case at that time. It would serve no legitimate purpose to allow the joinder of another, related defendant to work an exception to the thirty-day removal rule and permit the removal of a case that has already resulted in significant proceedings and legal rulings in another court. *Cf. In re Westinghouse Securities Litig.,* 982 F.Supp. 1031 (W.D.Pa.1997) (Smith, J.) (declining to adopt tolling rule that would permit litigants and counsel, through the interposition of a later-named plaintiff, to revive claims already extinguished on the merits). In accordance with the weight of authorities that have addressed this issue, the motion to remand will therefore be granted.

### III.

■ I must also decide whether to award costs and attorney's fees to plaintiff, as I am authorized in my discretion to do by 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."). *See*

---

**2.** Presumably, this was an alternate holding that would apply if PCA somehow were not merely a nominal party.

*Mints v. Educational Testing Serv.*, 99 F.3d 1253, 1260 (3d Cir.1996). I decline to do so. It does not appear that the defendants' removal petition was brought in bad faith, or, given the split of authorities discussed above, that there was no colorable basis for removal. *See id.* at 1260–61; *Moorco Int'l, Inc. v. Elsag Bailey Process Automation, N.V.*, 881 F.Supp. 1000, 1006–07 (E.D.Pa.1995).

An appropriate order follows.

### ORDER

AND NOW, this 9th day of February 1998, upon consideration of the plaintiff's motion to remand, dkt. no. 4, and the arguments of the parties relative thereto, it is hereby

ORDERED and DIRECTED that:

1. the above-captioned civil action be REMANDED to the Court of Common Pleas of Allegheny County, Pennsylvania FORTHWITH;

2. defendants' motion to dismiss and for more definite statement, dkt. no. 7, and plaintiff's motion for contempt, dkt. no. 12, are DENIED AS MOOT.