918 F.Supp. 1181 (1996)
In re AMINO ACID LYSINE ANTITRUST LITIGATION.
Jack ASHLEY, individually, etc., Plaintiff,
v.
ARCHER DANIELS MIDLAND CO., et al., Defendants.
Nos. 95 C 7679, 96 C 531.
United States District Court, N.D. Illinois, Eastern Division.
February 26, 1996.
Supplemental Order March 6, 1996.
*1182 J. Michael Rediker, Ritchie & Rediker, P.C., Birmingham, AL, Michael Straus, Bainbridge & Straus, Birmingham, AL, Michael Lawrence Fees, Herman A. Watson, Watson, Gammons & Fees, P.C., Huntsville, AL, for Jack Ashley.
*1183 L. Vastine Stabler, Jr., Walston, Stabler, Wells, Anderson & Bains, Birmington, AL, for Archer-Daniels-Midland Co.
A. Paul Victor, Debra J. Pearlstein, Steven Alan Reiss, Weil, Gotshal & Manges, New York City, Crawford S. McGivaren, Jr., Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, AL, for Biokyowa, Inc.
David I. Gelfand, Michael R. Lazerwitz, Mark Leddy, Cleary, Gottlieb, Steen & Hamilton, Washington, DC, Edward S. Sledge, III, P. Russell Myles, Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, AL, for Heartland Lysine, Inc.
Vito R. Vincenti, [NTC] Vito R. Vincenti, P.C., New York City, for Sewon America, Inc.

MEMORANDUM OPINION AND ORDER
SHADUR, Senior District Judge.
This action, originally filed in the United States District Court for the Northern District of Alabama, Middle Division, has come to this Court under the auspices of the Judicial Panel for Multidistrict Litigation ("MDL Panel"). But the procedures that led to that transfer also created a situation in which the record that had been transmitted to the MDL Panel and that was then forwarded here did not include the entire record in the originating court.[1] It was not until this Court recently received a computer printout of all pending motions in the cases on its calendar that it learned of a previously unknown motion in what has now become Case No. 96 C 531  a motion seeking to remand the case to the Alabama state court from which it had emanated. This Court's follow-up inquiry of the litigants then brought it copies of the memoranda that had been submitted to the Alabama District Court, which had caused the motion to become fully briefed.
At this point, then, the motion is ripe for decision. For the reasons stated here, this Court holds that the motion is well-taken and that an immediate remand is therefore in order.
As the case caption reflects, plaintiff Jack Ashley ("Ashley"), like the plaintiffs in each of the other actions placed on this Court's plate pursuant to the MDL Panel's orders, has filed a purported class action. But unlike each of those other lawsuits, all of which assert violations of the federal antitrust laws, Ashley and his counsel have been meticulous in framing their Complaint[2] in terms of claimed violations of the Alabama antitrust statutes alone (Complaint ¶¶ 16 and 64). Indeed, the plaintiff class is defined in Ashley's Complaint ¶ 26 in terms of persons or entities who purchased lysine or lysine products indirectly from defendants or their alleged coconspirators  a claim that cannot be advanced against alleged price fixers under federal law (Illinois Brick Co. v. Illinois, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977)) but that is viable under Alabama state law (Ala.Code §§ 6-5-60 and 8-10-1). And equally mindful of their desire to remain ensconced in the state court system, Ashley's counsel have sought to scotch any possibility of federal diversity jurisdiction by setting this express limitation on the damages sought to be recovered (Complaint ¶ 8 and Prayer for Relief G.c):
8. Plaintiff and the plaintiff class seek relief in the form of statutory damages and in lieu of any actual damages. Each member of the class, on information and belief, as well as the named plaintiff herein, on certain knowledge, has incurred statutory damages under the laws of Alabama in the amount if Five Hundred and No/100 ($500.00) Dollars for each injury and neither plaintiff nor any other member of the class seeks damages exceeding Fifty Thousand and No/100 ($50,000.00) Dollars, nor *1184 do their damages individually exceed Fifty Thousand and No/100 ($50,000.00) Dollars.
* * * * * *
WHEREFORE, plaintiff prays that:
c. plaintiff and each member of the plaintiff class recover the sum of Five Hundred and No/100 ($500.00) Dollars in statutory damages and in lieu of actual damages, for each instance of injury or damage suffered by reason of defendants' violation of sections 6-5-60 and 8-10-1 of the Alabama Code, and that joint and several judgment be entered against each defendant in favor of plaintiff and each of the class members.
Just as eager to escape the state court in favor of a federal court as Ashley and his counsel are to remain in the state court, defendants' counsel have tendered a number of arguments in claimed support of federal jurisdiction. Some of those appear to be ingenuous, some appear ingenious  but save for one possibility, they are without exception clearly lacking in substantive merit. And that one arguable contention, discussed later in this opinion, does not carry the day for them either.
As for federal subject matter jurisdiction generally, no proposition remains more firmly in place today than that voiced more than eight decades ago by Justice Holmes in The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913):
Of course, the party who brings a suit is master to decide what law he will rely upon, and therefore does determine whether he will bring a "suit arising under" the patent or other law of the United States by his declaration or bill. That question cannot depend upon the answer, and accordingly jurisdiction cannot be conferred by the defense, even when anticipated and replied to in the bill.
Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987), quoting The Fair and some later cases (id. n. 7), tells us that the plaintiff-as-master doctrine is still alive and well and living in Washington:
Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant. Absent diversity of citizenship, federal-question jurisdiction is required. The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. See Gully v. First National Bank, 299 U.S. 109, 112-13 [57 S.Ct. 96, 97-98, 81 L.Ed. 70] (1936). The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.
There is of course a limited exception to that principle that has developed its primary force in recent years, one that tells us that no "artful pleader" can avoid the federal courts by disguising what is really a federal-question claim as a state law claim (see, e.g., id. 482 U.S. at 397, 107 S.Ct. at 2432 and Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427 n. 2, 69 L.Ed.2d 103 (1981)). But that exception, which focuses on federal statutes whose preemptive force is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule" (Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987)), has been applied by the Supreme Court in only two instances: in cases raising claims preempted by Labor Management Relations Act § 301, 29 U.S.C. § 185(a) (Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal., 463 U.S. 1, 23, 103 S.Ct. 2841, 2853, 77 L.Ed.2d 420 (1983)) and cases raising claims preempted by ERISA (see Metropolitan Life). Despite defendants' urging, the "artful pleader" exception does not extend to Ashley's state law antitrust claim  not only is there an absence of complete preemption of that field by federal law, but a unanimous Supreme Court has expressly decided that the Alabama antitrust statutes at issue here (and similar statutes from other states) have not been preempted at all by the federal antitrust law (California v. ARC America *1185 Corp., 490 U.S. 93, 100-02, 109 S.Ct. 1661, 1664-66, 104 L.Ed.2d 86 (1989)).[3]
So much for the nonexistence of federal-question jurisdiction. What of diversity jurisdiction? Here too the seminal case law goes back many years but is still vital  in this instance the more-than-half-century-old decision in St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-89, 294, 58 S.Ct. 586, 590-91, 593, 82 L.Ed. 845 (1938) (footnotes omitted) teaches:
The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.
* * * * * *
If he does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove.
As the earlier quotation of Complaint ¶ 8 reflects, Ashley has taken St. Paul at its word by imposing a deliberate self-limitation on the damages sought here. Nonetheless defendants advance a barrage of contentions in an effort to push the amount in controversy above the $50,000 threshold and thus to create federal jurisdiction  but once again they come up empty. Indeed, although the litigants quarrel over whether Burns v. Windsor Ins. Co., 31 F.3d 1092, 1097 (11th Cir.1994) has impermissibly shifted the burden of showing the presence or absence of the jurisdictional amount as expressed in St. Paul, in this Court's view there is no real tension between the quoted excerpt from St. Paul and the principle stated in Burns, id. at 1095 (numerous citations omitted):
Federal courts are courts of limited jurisdiction. While a defendant does have a right, given by statute, to remove in certain situations, plaintiff is still the master of his own claim. Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing; for example, unlike the rules applied when plaintiff has filed suit in federal court with a claim that, on its face, satisfies the jurisdictional amount, removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand.
That identical approach is echoed in myriad opinions throughout the federal system  including those from our own Court of Appeals, most recently in Doe v. Allied-Signal, Inc., 985 F.2d 908, 911 (7th Cir.1993) (again citations are omitted):
Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum. Any doubt regarding jurisdiction should be resolved in favor of the states, and the burden of establishing federal jurisdiction falls on the party seeking removal.
As chance would have it, this Court has had occasion to deal extensively with this problem in diversity cases, not only in its accustomed role as a district judge but also when sitting by designation on our Court of Appeals in Shaw v. Dow Brands, Inc., 994 F.2d 364, 371-78 (7th Cir.1993). Although *1186 this Court spoke as a dissenter in Shaw, the majority there did not at all disagree with the underlying principles that were voiced in this Court's opinion  the panel majority reached a different result only because of some circumstances peculiar to that case.[4] And those principles, as expressed not only by this Court in Shaw but by the majority opinion in that case (id. at 366), command remand here.
First of all, under St. Paul and its progeny defendants cannot force Ashley to take more than $50,000 in damages when he does not wish to do so. Complaint ¶ 8 and the corresponding provision of the prayer for relief must be read as St. Paul allows a plaintiff to do: as unequivocally committing Ashley and each other class member to the collection of no more than $50,000. Burns, 31 F.3d at 1097 teaches that the possibility of a plaintiff's change of heart in the future does not affect today's duty to remand.
Before this opinion turns to defendants' efforts to lift those self-limited damages above the jurisdictional floor, mention should be made of one respect in which the parties cross swords over what amounts to an irrelevancy: the question whether the supplemental jurisdiction provisions of Section 1367 constitute a legislative overruling of Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). Of course Ashley, having brought this action in the state court in the first instance, had no occasion to look to Section 1367 as a potential source of jurisdiction over any party or any claim. By definition Section 1367 can come into play only after a case becomes properly lodged in federal court  in this instance, only if federal jurisdiction over Ashley's individual claim against defendants already exists, so that some other class member with a claim of less than the jurisdictional amount could arguably piggyback onto the Ashley claim via supplemental jurisdiction. If that were the situation, the Zahn requirement that the jurisdictional amount must exist as to every class member would defeat federal jurisdiction unless the enactment of Section 1367 has somehow undercut Zahn. But the reason that the issue does not truly arise here is that unless Ashley is properly in federal court, there is no jurisdictional foundation to which the claim of any other class member can be tied as a supplemental matter in any event.[5]
As it happens, this Court is among the large majority of courts that disagree with the Zahn-overruling view of In re Abbott Lab., 51 F.3d 524, 527-29 (5th Cir.1995). It has so ruled on a number of occasions since Section 1367 came into existence, often via oral rulings and occasionally in written opinions (such as its early opinion in Griffin v. Dana Point Condominium Ass'n, 768 F.Supp. 1299, 1301-02 & n. 4 (N.D.Ill.1991) and its more recent opinion in Aspe Arquitectos, S.A. de C.V. v. Jamieson, 869 F.Supp. 593, 595 (N.D.Ill.1994)). But because Ashley is not entitled to be in federal court to begin with, and because the same limitation that applies to Ashley governs every other class member (see n. 5), the question is really moot.
*1187 To return to the amount-in-controversy dispute as such, then, defendants urge two factors to take Ashley's claim over the top: the Complaint's prayers for attorneys' fees and for injunctive relief. Neither of those succeeds in lifting the Complaint's $50,000 ceiling that was expressly devised by Ashley and his counsel to keep the case in the state court system.
As for attorneys' fees, it is true that the Complaint's prayer for relief (its item G.e) is ambiguous in its reference to the recovery of "reasonable attorneys' fees as provided by law." But Ashley's counsel have made it crystal clear that they view this as a "common fund" case and not one for a statutory fee award, so that the request for attorneys' fees is to be taken out of (and is not in addition to) the damages that are recoverable under the Alabama statutes on which the lawsuit is based.[6] That being true  with attorneys' fees, if any, being taken out of the pot and not adding to the pot (see, e.g., Camden I Condominium Ass'n, Inc. v. Dunkle, 946 F.2d 768, 771, 773-75 (11th Cir. 1991))  there is no arguable addition to the amount in controversy.
That leaves for consideration only the Complaint's prayer for injunctive relief that Ashley has included immediately after the prayer for damages  in that respect, Complaint Prayer for Relief G.d simply asks that "each defendant be enjoined from continuing the illegal conspiracy alleged herein." On that score defendants urge that if Ashley (like each other class member) has even a nominal allocable share of the value of an injunction, what had been a $50,000 ceiling is immediately converted into an over-$50,000 subject matter jurisdictional amount.
To begin with (and perhaps parenthetically), that argument poses an aspect of the litigation to which the parties have not spoken: the meaning and construction of the Complaint's prayer for a $500 recovery "for each instance of injury or damages." Does that mean that each time that Ashley bought lysine (not from any defendant but from a customer of a defendant, it will be recalled) he suffered an "instance of injury or damage," so that his recovery would be $500 multiplied by the number of purchases  subject of course to the self-imposed $50,000 limitation as to any defendant under Complaint ¶ 8? Or does "injury or damage" in terms of the statute have a more restricted meaning, so that each class member's potential recovery from each plaintiff would be materially less, perhaps only $500 per plaintiff (with the $50,000 limitation having been inserted into Complaint ¶ 8 as a precautionary provision out of a superabundance of caution)? In the latter event, of course, any value attributable to the injunctive prayer would have to bulk much larger to produce the requisite amount in controversy.
None of the parties has seen fit even to address that potentially significant issue in the current set of briefs, so that the question has been left unclear. This Court's own resort to the annotated Alabama statutes has disclosed precious little case law: There appear to be just two potentially relevant opinions, both of considerable age (Alabama Optometric Ass'n v. Alabama State Bd. of Health, 379 F.Supp. 1332, 1340-41 (M.D.Ala. 1974) and, before that and more importantly, Nickelson v. Nestles Milk Prods. Corp., 107 F.2d 17 (5th Cir.1939)).
Neither of those opinions emanates from an Alabama state court (like this case, Nickelson was originally filed in a state court and was then removed to federal court), so that they cannot be viewed as definitive guides to the construction of the Alabama statutes. Even so, Nickelson may provide a special insight because it clearly does treat as a separate claim each prospective sale to a defendant (in that case the alleged antitrust conspiracy was a refusal to deal in restraint of trade), thus causing each sale to give rise to a potential $500 statutory recovery. In any event, this opinion will proceed on the latter premise for analytical purposes, in consequence of which there is at least the possibility that a full $50,000 has already been deposited in the jurisdictional scale and that a quantification of the additionally-prayed for *1188 injunctive remedy would provide the overflow that would give defendants their ticket of entry to the federal court system.
In that last respect it is critical to note that Ashley's real goal for himself and his fellow putative class members is unquestionably the recovery of damages  although no individual class member can realize a really big-ticket recovery under the constraints that have been stated in Complaint ¶ 8, the extremely large number of indirect purchasers included in the class definition[7] plainly makes the lawsuit a worthwhile venture for the class and their counsel. It seems obvious from the Complaint, and is confirmed by Ashley's memoranda on the current motion, that the tacked-on prayer for equitable relief is only that (after all, if the plaintiff class proves to be successful in establishing defendants as antitrust violators, defendants would thereafter be foreclosed by operation of law from continuing their conduct that would then have been adjudicated as predatory).
It takes only a few moments' thought to recognize that defendants' effort to measure the amount in controversy by ascribing added value to the purely corollary injunctive prayer in the circumstances here proves too much. If that were the case, any regular customer of diverse citizenship from its seller who had been the victim of any illegal practice of that seller to the tune of (say) $20,000, and who had then sued for those damages in a state court on a state cause of action, could be removed to the federal court on the theory that an injunction against identical conduct in the future would be likely ultimately to save that customer at least another $30,001. Yet another such customer in an identical position who had included only its current damages prayer in its state court complaint would be spared the prospect of future predatory conduct exactly to the same extent as if an injunction had been entered  and not even defendants would take the position that $20,000 really equates to $50,001 for federal jurisdictional purposes just because the defendants have an ongoing business relationship.
That being the case, this Court holds that the logic of the Third Circuit's decision in Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1050 (3d Cir.1993) (footnote and most citations omitted) points the way to the result here:
As a separate ground for affirmance, Upp points out that the complaint included a demand for injunctive relief and argues that we should measure the jurisdictional amount not by the damages of the plaintiffs, but by the costs to Mellon in complying with it. We decline to do so.
In a diversity-based class action seeking primarily money damages, allowing the amount in controversy to be measured by the defendant's cost would eviscerate Snyder's holding [Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969)] that the claims of class members may not be aggregated in order to meet the jurisdictional threshold. We will not permit plaintiffs to do indirectly that which they cannot do directly. Moreover, we have stated that a plaintiff may not turn what is essentially a legal claim into an equitable one merely by demanding an injunction requiring the payment of money. Here, virtually all the relief sought is remediable by money damages. The only truly equitable relief sought in this case is an order requiring Mellon to provide adequate notice of its sweep fees to trust beneficiaries and to tie future sweep fees to the cost of providing the service. Plaintiff, however, has not presented the district court with any data whatsoever regarding Mellon's estimated cost of complying with such an order. Accordingly, we could not consider that cost even if we were to agree with Upp's "defendant's cost" theory.
Indeed, this case really represents an a fortiori application of the Packard principle. Here not "virtually all" but truly all of "the relief sought is remediable by money damages."[8] By the natural operation of the *1189 doctrine of issue preclusion if Ashley and the class succeed in their real goal of collecting damages, the essential equivalent of injunctive relief follows as night follows day  and there is no incremental cost to defendants created by the Complaint's tag-along prayer for confirmatory injunctive relief.[9] That then torpedoes defendants' last possible argument for keeping the case in the federal system.

Conclusion
For the reasons spelled out in this opinion, Ashley and his counsel must be viewed as successful in having circumscribed their litigation sufficiently to avoid federal jurisdiction  something that St. Paul teaches a plaintiff has the absolute right to do. Because "it appears that the district court lacks subject matter jurisdiction" (28 U.S.C. § 1447(c)), this Court orders the action remanded to the Circuit Court of DeKalb County, Alabama. As permitted under this District Court's General Rule 30B, the certified copy of the remand order shall be mailed by the Clerk of Court forthwith.

SUPPLEMENT TO MEMORANDUM OPINION AND ORDER
On February 26, 1996 this Court issued its memorandum opinion and order ("Opinion") remanding this action to its place of origin, the Circuit Court of DeKalb County, Alabama. Almost a week later (on March 4) there inexplicably arrived in this Court's chambers a document from first-named-defendant Archer Daniels Midland Company ("Archer") captioned its "Submission of Supplemental Authority in Support of Defendants' Opposition to Motion To Remand." Without troubling to inquire as to what failure of communication may have occasioned that after-the-fact submission (apparently Archer was not yet aware of the issuance of the Opinion), this Court issues this supplement to the Opinion to explain why Archer's additional citation of authority calls for no different result.
Archer points to the February 20, 1996 opinion of our Court of Appeals in Stromberg Metal Works, Inc. v. Press Mechanical, Inc., 77 F.3d 928 (7th Cir.1996), a decision that antedated the Opinion in this case by several days but that had been part of the weekly batch of the Court of Appeals' slip opinions received and reviewed by this Court just after its issuance of the Opinion. What Stromberg has done is to reach the same result as In re Abbott Laboratories, 51 F.3d 524, 527-29 (5th Cir.1995) and, in so doing, to demonstrate that in that respect this Court may have possessed a clouded crystal ball (see Opinion at 1186). Although this Court is sufficiently unregenerate to continue to believe that its earlier decisions express the better view on the meaning and effect of 28 U.S.C. § 1367 ("Section 1367")  an issue that may in time occupy the Supreme Court[1]  it *1190 will of course adhere to Stromberg as binding Seventh Circuit law.[2]
But as Opinion at 1186 said even before this Court received the Stromberg opinion, all of this is entirely beside the point: It is simply moot. Neither Ashley nor any other class member has advanced a claim in this case that itself surpasses $50,000  and what neither Stromberg nor Abbott nor any other authority permits (let alone requires) is the aggregation for amount-in-controversy purposes of different plaintiffs' discrete claims, none of which individually satisfies the jurisdictional requirement.
Accordingly Stromberg gives Archer and its codefendants no comfort. This Court's remand order, as directed in the Opinion, remains intact.
NOTES
[1] That omission was the natural consequence of the timing of the motion to bring the matter before the MDL Panel, a motion that came early in the history of the Alabama litigation and was then acted on by the MDL Panel after some post-motion filings had been made in the Alabama District Court as a matter of course.
[2] This refers to the original Complaint as amended by a one-paragraph First Amendment to Complaint filed September 6, 1995.
[3] This is one area in which defendants' arguments may with regret be viewed as disingenuous rather than ingenuous  and certainly not as ingenious. For defendants to argue (at their Mem. 3) that "plaintiff must seek a remedy (if any) in federal antitrust law" in the teeth of a square Supreme Court decision to the contrary  and one involving the selfsame Alabama statutes at that  defies reason.
[4] In fact, during this past year the Tenth Circuit has rejected the Shaw majority opinion on the issue that had split the Shaw panel (a difference that, it should be noted, is entirely irrelevant to the present case), and in doing so the Tenth Circuit expressly adopted this Court's dissenting position (see Laughlin v. Kmart Corp., 50 F.3d 871, 873-74 (10th Cir.1995)). Because the Supreme Court then denied certiorari in Laughlin, an intercircuit conflict continues to exist on the divisive issue. And even before Laughlin the Second Circuit, while it was not required to decide the issue, had impliedly cast doubt on the majority's holding in Shaw  and in so doing it also referred to this Court's Shaw dissent (United Food & Commercial Workers Union, Local 919 v. Centermark Prop. Meriden Square, Inc., 30 F.3d 298, 304 (2d Cir.1994)).
[5] Defendants argue in part that Ashley cannot bind any absent class member to the not-over-$50,000 damage limitation in the Complaint. But The Fair's proposition that Ashley is the master of his Complaint torpedoes that argument  neither defendants nor any now-absent class member can rewrite Ashley's carefully constructed pleading. If any putative class member wishes to recover more than $50,000 (thus potentially creating federal jurisdiction as to that plaintiff on diversity grounds), it could not be done in this lawsuit as it has been framed and limited by Ashley. Instead any such class member who had larger-sized dollar signs in his or her eyes would simply have to opt out of this lawsuit.
[6] No provision for an award of attorneys' fees in addition to damages is found in the statutes themselves.
[7] For example, every farmer in Alabama would appear to be a prospective participant in a successful recovery.
[8] This Court is of course aware of the case law that holds that where the real focus of a plaintiff's claim is to obtain injunctive relief, "the amount in controversy is measured by the value of the object of the litigation" (Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 347-48, 97 S.Ct. 2434, 2443-44, 53 L.Ed.2d 383 (1977)). But none of the cases holding to that effect has dealt with an effort such as is made by defendants here, who seek to heap Pelion upon Ossa  to add to the damages that are really sought by plaintiffs the asserted value of a purely corollary injunction. Packard, 994 F.2d at 1050 n. 14 distinguished and rejected the applicability of Hunt in "the diversity-based class action situation present here." This Court will follow Packard on that score as well.
[9] To be sure, enforcement of an injunction can take the form of a motion for contempt, while that remedy would not be available for future violations after a suit for damages alone. But to ascribe value to that differential is to impute to defendants an intention to continue to flout the law after their conduct has been found illegal  are they really telling us that? This Court will not credit such a scenario as the predicate for increasing the amount in controversy.
[1] Even if it is accepted that Abbott and now Stromberg reflect the literal reading of Section 1367 (a reading at direct odds with Congress' intent), the Supreme Court has been known to reject even the clear literal meaning of statutes where it found that result to be appropriate. See, e.g., Public Citizen v. United States Dep't of Justice, 491 U.S. 440, 454-55, 109 S.Ct. 2558, 2566-67, 105 L.Ed.2d 377 (1989), reconfirming among other decisions the century-old pronouncement to that effect in Church of the Holy Trinity v. United States, 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892).
[2] That would certainly include following Stromberg's teaching in this case if it were relevant  as it is not.